TRACY L. WILKISON
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
JULIA HU (Cal. Bar No. 338226)
Assistant United States Attorney
MARIA JHAI (Cal. Bar No. 283059)
Assistant United States Attorney
General Crimes Section
     1200 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-3802/4138
     Facsimile: (213) 894-6269/0141
     E-mail:    julia.hu@usdoj.gov
                maria.jhai@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 21-00075-MCS-1 |
|---|---|
| Plaintiff, | GOVERNMENT'S SENTENCING POSITION REGARDING DEFENDANT YIXIN LI |
| v. | |
| YIXIN LI, | Hearing Date: February 14, 2022 |
| Defendant. | Hearing Time: 3:30 P.M. |

　　　　Plaintiff United States of America, by and through its counsel of record, the United States Attorney and Assistant United States Attorneys Julia Hu and Maria Jhai, hereby files its Sentencing Position Regarding Defendant Yixin Li ("defendant").

　　　　This position is based upon the attached memorandum of points and authorities, the files and records in this case, the Presentence Report ("PSR") disclosed by the United States Pretrial Service and Probation Office ("USPO") on December 27, 2021 (docket number

1

("Dkt.") 158), and such further evidence and argument as the Court may wish to consider at the time of sentencing.

    The government reserves its right to file any response to defendant's sentencing position, if necessary.

Dated: January 31, 2022       Respectfully submitted,

TRACY L. WILKISON
United States Attorney

SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division

    /s/ *Maria Jhai*
MARIA JHAI
JULIA HU
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.  INTRODUCTION**

Starting no later than June 2015, defendant Yixin Li ("defendant") and his co-defendant Yi Chen ("CHEN") ran so-called "education consulting" companies that were, in fact, a front for immigration fraud. Serving mostly Chinese foreign nationals, defendant and CHEN would create and submit fraudulent applications to United States colleges and universities so that the schools would accept their clients for admission and issue the clients a "Form I-20," a document required to get a student visa.

In November 2021, defendant pleaded guilty to conspiracy to commit immigration document fraud, in violation of 18 U.S.C. §§ 371, 1546(a), and to ten individual counts of immigration document fraud, in violation of 18 U.S.C. § 1546(a). As a condition of his plea agreement, defendant agreed to cooperate with law enforcement. In December 2021, defendant testified at the trial of his co-defendant CHEN.

As set forth herein, the government agrees with the USPO that defendant's applicable guidelines range -- without any departure under USSG § 5K1.1 -- is 18 to 24 months, based on an offense level of 14 and a criminal history category of II. In light of defendant's cooperation, however, the government moves for a four-level departure to offense level 10, with a resulting Guidelines range of 8 to 14 months. Defendant was detained pending trial, and thus has already served approximately 9.5 months in prison. The government therefore recommends that the Court impose a time-served sentence, as well as a three-year term of supervised release, and a mandatory special assessment of $1,100.

1

## II. FACTUAL BACKGROUND

The government agrees with the PSR's statement of facts and asks the Court to adopt that statement for the record. For ease of reference, the government offers the following summary with citations to the PSR and defendant's plea agreement.

Starting no later than June 2015, and continuing through at least February 2021, defendant conspired with his co-defendant CHEN to defraud the U.S. immigration system, by duping U.S. colleges and universities into accepting foreign students for admission, causing the schools to issue the students documentation needed to enter or remain in the United States on a student visa. (PSR ¶ 13; Plea Ag. ¶ 17.)[1]

Defendant, along with CHEN, perpetrated the fraud under the guise of running "education consulting" companies that offered visa-seekers "guaranteed" admission to U.S. schools. (PSR ¶¶ 12, 14; Plea Ag. ¶ 17.) Defendant, both individually and in cooperation with CHEN, would secure students' admission using a variety of fraudulent tactics, including (1) arranging for and paying an imposter to take standardized tests on students' behalf; (2) buying fake or altered high school or college transcripts in students' names; and (3) paying ghostwriters to write fabricated admissions essays and letters of recommendations for students' application packets. (PSR ¶ 14; Plea Ag. ¶ 17.) Using these fraudulently obtained and falsified materials, defendant would submit, or cause to be submitted, applications to United States schools for his clients. (PSR ¶ 14; Plea Ag. ¶ 17.) Schools that were thus duped

---

[1] Defendant's plea agreement was filed under seal on October 6, 2021. (See Dkt. 91.)

into admitting students on the strength of falsified applications would issue the admitted students a Certificate of Eligibility for Nonimmigrant (F-1) Student Status, also called a Form I-20, which is a document that foreign students must obtain to enter or stay in the United States on a student F-1 visas. (PSR ¶¶ 13, 15; Plea Ag. ¶ 17.) All told, acting individually or in concert with CHEN, defendant knowingly obtained, or caused to be obtained, at least twenty-five Form I-20s for foreign students by means of fraudulent and falsified school applications, including as to the students identified in counts one, two through eight, and seventeen through nineteen of the indictment. (PSR ¶¶ 16-28; Plea Ag. ¶ 17.)

Defendant was in custody on the charges in this case from March 2, 2021 to on or about December 20, 2021, for a total time in detention of approximately nine months and 18 days. (See Dkts. 16, 152.)

**III. SENTENCING GUIDELINES CALCULATIONS**

The USPO calculated a total offense level of 14 and a criminal history category of II, resulting in a guidelines range -- prior to any downward departure for substantial assistance -- of 18 to 24 months for defendant's convictions. (PSR ¶¶ 36-46, 96.) The government agrees with these calculations.

Defendant's base offense level for immigration-document fraud is eleven. (PSR ¶¶ 35-36); USSG § 2L2.1(a); see also USSG § 3D1.2(d) (providing for grouping). A six-level increase applies because defendant's fraudulent conduct involved between 25 and 99 "documents or passports," here the fraudulently obtained I-20s. (PSR ¶¶ 37-38); USSG § 2L2.1(b)(2)(B). With credit for acceptance

3

of responsibility, defendant's total offense level is therefore 14. (PSR ¶ 46); USSG § 3E1.1(a), (b).

Defendant is in criminal history category II. As the USPO calculated, defendant has three criminal history points: one for his 2013 conviction for using another's identification, (PSR ¶ 51), and two more because defendant was still serving a term of probation when he committed the instant offenses. (PSR ¶¶ 51-54.) Three points places defendant in criminal history category II. (PSR ¶ 55.)

Thus, as the USPO calculated, with criminal history category II and offense level 14, defendant's guideline sentencing range --before any downward departure under USSG § 5K1.1 -- is 18 to 24 months. (See PSR ¶ 96.)

**IV. MOTION FOR DEPARTURE UNDER USSG § 5K1.1**

The government moves for a four-level downward departure under USSG § 5K1.1 because of defendant's substantial assistance in the prosecution of his codefendant CHEN.

Under § 5K1.1, the government may move for a departure from the guidelines when "the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense." USSG § 5K1.1. In determining the appropriate reduction, the Court may consider factors including, (1) the significance and usefulness of the defendant's assistance; (2) the truthfulness, completeness, and reliability of any information or testimony provided by defendant; (3) the nature and extent of the assistance; (4) any risks defendant incurred in providing the assistance; and (5) the timeliness of the assistance. Id. Here, these factors favor a four-level departure, as follows.

4

**1.  Nature and Extent of Defendant's Assistance**

Defendant substantially assisted the government by meeting with law enforcement and testifying at the trial of his co-defendant. Before testifying, defendant met with the government on multiple occasions for lengthy proffer sessions, during which defendant provided information about the fraudulent scheme, his relationship with CHEN, and the sources and resources they used to prepare the fraudulent applications. Defendant also answered questions regarding email communications and other documents in the government's possession, and he granted consensual access to his email account, which permitted the government to obtain copies of email communications between defendant and CHEN that were admitted as exhibits at trial. At trial, defendant's testimony on direct and cross-examination spanned two days. Defendant testified to topics including: (1) the operation and founding of "Prime US Education," a business name used by both defendant and CHEN to perpetrate the fraudulent scheme; (2) resources for fraudulent admission applications shared by defendant and CHEN, including sources for fake transcripts, imposter test-takers, and ghostwritten essays; and (3) communications with CHEN regarding the use of those resources, including in relation to students identified in the indictment.

**2.  Significance and Usefulness of Assistance**

Defendant's meetings with law enforcement and testimony at trial were valuable. The emails defendant provided to law enforcement during meetings comprised evidence of communications with CHEN within the course of the conspiracy that were admitted in evidence. Defendant's testimony at trial regarding his communications with CHEN aided the government in proving the

existence and operation of the conspiracy. Defendant's testimony also provided context for government exhibits including, for example, testimony regarding the origin of transcript templates and graduation certificate shells recovered from CHEN's computer that appeared in multiple falsified applications. Trial is about the search for truth; in the government's view defendant's testimony aided in that process.

### 3. Truthfulness, Completeness, and Reliability

The government is not aware of any reason to doubt defendant's candor during his testimony or proffers.[2] Defendant provided reliable information during meetings with law enforcement, and his testimony at trial was reliable and complete. Defendant's statements were corroborated by other witnesses, as well as documentary evidence, including email correspondence, documents seized from CHEN's devices, financial records, and student applications obtained from colleges and universities.

### 4. Risk of Danger or Physical Injury and Timeliness

These two factors do not weigh heavily in either direction. As to risk of danger, the government is not aware of any reason specific to this case to be concerned for defendant's physical danger or risk of injury in connection with his testimony. As to timeliness, this case was indicted in March. Defendant indicated interest in meeting with law enforcement no later than June 2021.

---

[2] Forfeiture proceedings are ongoing with respect to the property located at 917 South Ramona Street, San Gabriel, California 91776. This sentencing position does not address defendant's credibility or candor in any continuing or future proceedings that may occur in that context.

6

In consideration of all the foregoing factors, the government moves for a four-level downward departure under USSG § 5K1.1, making defendant's total offense level 10, and his guidelines range 8 to 14 months.

**V.    GOVERNMENT'S SENTENCING RECOMMENDATION**

Based on the plea agreement, the record as a whole, and the factors set forth in 18 U.S.C. § 3553(a), the government recommends a sentence equivalent to the time defendant has already served in custody, to be followed by a three-year term of supervised release.

A time-served sentence is sufficient, and no greater than necessary. See 18 U.S.C. § 3553.  This recommendation is not intended to minimize defendant's conduct.  Immigration fraud is a serious offense, and defendant -- by gaming the college admissions system -- committed the fraud in a manner that had real consequences for innocent actors, including the schools that were duped into admitting students on false pretenses, and honest applicants who were denied a spot.  See 18 U.S.C. § 3553(a)(2)(A)-(C).  Nor was this short-term or one-off conduct.  Defendant perpetrated the scheme for years, until caught, using it as a way to make a living. (PSR ¶¶ 13, 20-24, 79.)  Defendant's own testimony established that he is a sophisticated fraudster, with ready access to connections and resources.  18 U.S.C. § 3553(a)(2)(A).  He was readily able, for example, to identify sources for fake transcripts, imposter test-takers, fabricated essays and recommendation letters, and even fake doctor's notes.  (See PSR ¶ 15.)  Deterrence is especially important in this context; by running his fraudulent scheme as a business, defendant helped perpetuate a mini economy around immigration fraud. It is important for criminal penalties to give lie to the benefits

7

of participating in such fraud-based business enterprises. See 18 U.S.C. § 3553(a)(2)(B), (C).

Nonetheless, mitigating factors warrant a time-served sentence here. Significantly, defendant promptly pleaded guilty and accepted responsibility, unlike his co-defendant. Moreover, of the two defendants indicted in the scheme, defendant appears to be relatively less culpable. CHEN, after initially working with defendant at Prime US Education, left to open MS Education Consulting Group, his own "education consulting" company offering fraudulent admissions services, where CHEN took the scheme to the next level, hiring full-time staff and charging clients, at times, six-figure sums for the fraudulent services. Further, the government requests a time-served sentence to give effect to its departure motion. Specifically, under the plea agreement, the government agreed to recommend a sentence at the low-end of defendant's guidelines range assuming an offense level of 14 or higher. (Plea Ag. ¶ 6(e).) The agreement is not binding if the Court departs downward pursuant to a § 5K1.1 departure. (Id.) Nonetheless, for the reasons stated above, the government recommends defendant receive a full four-level departure for cooperation. To give that departure full effect, defendant should be sentenced toward the low-end of his reduced guidelines range, here a time-served sentence.

The Court should impose a three-year term of supervised release, which is the statutory maximum for this offense. (PSR ¶ 98.) The government requests a three-year term for two reasons. First, to the government's knowledge, defendant is lawfully present

8

as an asylee.[3] Should defendant's immigration status change, however, a lengthy term of supervision will deter illegal reentry. Second, the government requests a three-year term to deter further fraudulent business operations by defendant. Specifically, the government requests a three-year term with a condition providing that defendant "shall be precluded from offering education consulting services to foreign students, including services in any way related to assisting clients with gaining admission to or attending school in the United States."

Finally, as described in the Preliminary Order of Forfeiture, the government asks the Court to pronounce forfeiture at sentencing. (See Dkt. 128.)

**VI. CONCLUSION**

As set forth above, the government requests that the Court grant the government's motion for a four-level departure under USSG § 5K1.1, and sentence defendant to a time-served sentence, followed by three years of supervised release, and a mandatory special assessment of $1,100.

---

[3] The government's information is inconsistent with the PSR's statement that defendant "appears to be illegally in the U.S." (PSR ¶ 91.)

9